**SEMICONDUCTOR ENERGY LABORATORY, CO., LTD., Plaintiff,**

v.

**SAMSUNG ELECTRONICS CO. LTD., Samsung Electronics America, Inc. and Samsung Semiconductor, Inc. Defendants.**

No. CIV. A. 96–1460–A.

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 23, 1998.

Gregory L. Murphy, Alexandria, VA, for Plaintiff.

Thomas J. Scott, Howrey and Simon, Washington, DC, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this patent infringement action, plaintiff Semiconductor Energy Laboratory Co. ("SEL") alleged that defendants Samsung Electronics, Samsung Electronics America, and Samsung Semiconductor, (collectively

"Samsung") made or sold active matrix display units that infringed SEL's U.S. Patent No. 5,543,636 ("the '636 patent"). Among its defenses to SEL's charge of infringement, Samsung alleged that the '636 patent was unenforceable owing to SEL's inequitable conduct before the Patent and Trademark Office ("PTO"). Between March 17, 1998 and April 3, 1998, a seven-day hearing was held on Samsung's affirmative defense of inequitable conduct, during which time the parties presented fact and expert opinion testimony from several witnesses, offered into evidence numerous exhibits, and submitted written and oral arguments. By Memorandum Opinion and Order dated April 15, 1998, the Court found that SEL engaged in inequitable conduct during the prosecution of the '636 patent, and accordingly dismissed the complaint with prejudice. *See Semiconductor Energy Laboratory, Co., Ltd. v. Samsung Electronics Co., Ltd.,* 4 F.Supp.2d 477 (E.D.Va.1998) ("SEL I").

This matter is now before the Court on SEL's motion to reconsider the Court's inequitable conduct ruling. Specifically, SEL contends that numerous legal errors and factual misunderstandings formed the foundation of this Court's April 15, 1998 Memorandum Opinion, and that such errors entitle plaintiff to relief under Rule 59(e), Fed. R.Civ.P.[1]

## I.

 Rule 59(e) permits an aggrieved party to file a motion to alter or amend a judgment within ten days of its entry. Although the Rule itself provides no guidance on when district courts may grant such a motion, the Fourth Circuit[2] has identified three grounds for amending a prior judgment:

(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.

*E.E.O.C. v. Lockheed Martin Corp.,* 116 F.3d 110, 112 (4th Cir.1997)(citing *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993)).

 In the instant case, SEL does not assert the first ground as a basis for relief, but rather relies on the second and third. Yet, reliance on the second ground is misplaced, for "new evidence" must be "newly discovered since the judgment was entered." *Boryan v. United States,* 884 F.2d 767, 771 (4th Cir.1989). SEL's evidence does not satisfy this definition.[3] Thus, because "[e]vidence that is available to a party prior to entry of judgment ... is not a basis for granting a motion for reconsideration as a matter of law,"[4] SEL must rely on the third ground as a basis for Rule 59(e) relief.

Therefore, to win Rule 59(e) relief, SEL must establish that there has been a clear error of law, or that a manifest injustice will result from enforcement of this Court's April 15, 1998 Order. *See Lockheed Martin,* 116 F.3d at 112.[5] SEL succeeds in neither re-

---

1. Although SEL's "Motion for Reconsideration of Inequitable Conduct Ruling" failed to invoke a specific Federal Rule of Civil Procedure, a motion for reconsideration, filed within ten days of the entry of judgment, is properly treated as a motion to alter or amend the judgment under Rule 59(e), Fed.R.Civ.P. *See In re Burnley,* 988 F.2d 1, 2–3 (4th Cir.1992).

2. The Federal Circuit generally defers to "regional circuit law when the precise issue involves an interpretation of the Federal Rules of Civil Procedure or the local rules of the district court." *Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 857 (Fed.Cir.1991).

3. SEL relies heavily in its motion for reconsideration on numerous documents not presented at trial, specifically, (i) *several documents from pat*ent prosecution files, (ii) two declarations, one from an individual never previously identified, and (iii) a supplemental report of one of Sam-

sung's experts. Yet the record reveals, and SEL does not deny, that the evidence now offered in support of its Rule 59(e) motion was either in SEL's possession prior to trial or was attainable by SEL prior to trial.

4. *See Boryan,* 884 F.2d at 771. A district court may, in its discretion, accept material that is not technically "new evidence," provided that a party's failure to produce it initially was justified. *See RGI, Inc. v. Unified Indus., Inc.,* 963 F.2d 658, 662 (4th Cir.1992). This is not such a case. SEL had ample notice of Samsung's inequitable conduct allegations, and offers "no justified reason" why these materials were not produced during the seven day hearing. *See id.*

5. SEL argues that its post-judgment declarations establish that the Court's ruling was based on an erroneous understanding of the evidence, and that consideration of these declarations is re-

spect. First, SEL asserts two arguments with respect to its submission of a partially translated foreign application based on purportedly clear errors of law. But as this opinion reflects, (i) the Court correctly applied the right rule for "cumulative evidence" and (ii) PTO Rule 98(a)(3) does not excuse SEL's conduct. Second, SEL points out that the previous opinion proceeds on a mistaken assumption about which patent prosecution included certain misrepresentations and arguments made with respect to the Tsai reference. Nonetheless, this mistake of fact does not affect the result reached. Under settled principles of law, and sensible extensions of these principles, the same result obtains, even if, as it now appears, these arguments were made during the prosecution of the '455 application (No. 425,455) and the '494 application (No. 214,494) rather than the '636 patent.[6]

## II.

### A. The Canon '968 Application

In *SEL I*, the Court found that SEL engaged in inequitable conduct before the PTO in connection with its submission to the PTO of the Canon '968 application when it chose to submit a partial translation and a sum-

mary that together concealed the materiality of the Canon '968 application. *See SEL*, 4 F.Supp.2d at 494–95. SEL, of course, disagrees. It argues first that the Court's finding that the Canon '968 application was material, and hence not cumulative of other information before the PTO, was based on an improper legal standard. Second, SEL argues that its submission of a partial translation of the Canon '968 application that was already in existence cannot constitute inequitable conduct as a matter of law. Both arguments are meritless and warrant no Rule 59(e) relief.

### 1. The Canon '968 Application Was Not Cumulative

■ It is undisputed that information that is cumulative to information already of record is not material to patentability. 37 C.F.R. § 1.56. Also essentially undisputed is that, as noted in *SEL I*, "a withheld reference may be highly material when it discloses a more complete combination of relevant features, even if those features are before the patent examiner in other references." *SEL*, 4 F.Supp.2d at 482 (citing *Molins*,[7] *LaBounty*,[8] *In re Jerabek*[9]). SEL contends that the Court oversimplified

---

quired to prevent a fundamental miscarriage of justice. Of course, the declarations in issue would be properly considered on those grounds. *See Lockheed Martin*, 116 F.3d at 112. Yet, rather than reveal any such error, the declarations submitted here merely reveal SEL's continued disagreement with this Court's findings. Indeed, the declarations advance essentially the same arguments that were advanced by SEL's experts at the hearing and ultimately found unpersuasive by the Court. *See SEL*, 4 F.Supp.2d at 482, n. 8.

**6.** SEL also asserts that

(i) the Court's treatment of the Sony '2073 patent was legal error,

(ii) the finding of *prima facie* obviousness from the combination of the Japanese laid-open Application No. 56–135968, assigned to Canon K.K. (the "Canon '968 application") and a 1983 article by Dr. C.C. Tsai, titled "Amorphous Si Prepared in a UHV Plasma Deposition System" (the "Tsai reference" or "Tsai article") was legal error,

(iii) estoppel precludes Samsung from arguing that the Canon '968 Application is not cumulative evidence,

(iv) the Court's finding regarding the '636 IDS's summary of the Canon '968 application is an error of fact and law,

(v) the Court's understanding of the '636 patent's claim is legal error, and

(vi) SEL's arguments about the Tsai reference were not frivolous or inconsistent.

Yet, these arguments are mere reassertions of arguments advanced and rejected in *SEL I*, and thus are inappropriate on a Rule 59(e) motion and need not be addressed again here.

**7.** *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 (Fed.Cir.1995)(reference material where it showed a combination of the elements for which the examiner had relied upon two separate references to reject the patent application claims).

**8.** *LaBounty Mfg., Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1075–76 (Fed.Cir.1992)(undisclosed items were material when they disclosed "more relevant features" than the cited items).

**9.** *In re Jerabek*, 789 F.2d 886, 890 (Fed.Cir.1986)(withheld reference material when no single piece of cited prior art taught the combination present in the reference).

the standard in its materiality analysis by simply counting the number of elements disclosed in the Canon '968 application without any consideration for whether the disclosure of that combination was actually significant. Yet, SEL is mistaken. The fact that no other reference before the examiner contained as complete a combination of the '636 patent's elements as in the untranslated portions of the Canon '968 application was, of course, central to the Court's conclusion that the Canon '968 application was not merely cumulative. *See id.* at 484. But the conclusion was additionally informed by the fact that the absence of a fully translated Canon '968 application before the PTO enabled SEL to make arguments in support of patentability that it otherwise would not have been able to make. *See id.* at 494. Thus, contrary to SEL's assertion, the Court did not simply apply a "mathematical formula" to determine materiality.[10]

### 2. PTO Rule 98(c) Does Not Excuse SEL's Inequitable Conduct

In connection with its '636 patent application, SEL submitted (i) a full 29–page Japanese language version of the Canon '968 application, (ii) a one-page partial translation of the Canon '968 application disclosing the use of a silicon nitride gate insulator in a thin film transistor ("TFT"), and (iii) a statement describing the Canon '968 application's relevance to the '636 patent as " 'disclos[ing] the use of silicon nitride for a gate insulating layer of a [TFT].' " *See SEL,* 4 F.Supp.2d at 483. Yet, as *SEL I* noted, the Canon '968

application's relevance to the patentability of the invention claimed in the '636 patent was far more substantial. *See id.* Indeed, the evidence adduced at trial was clear and convincing that the Canon '968 application disclosed other elements of the invention claimed in the '636 patent, elements which formed a basis for SEL's patentability argument.[11] *See id.* 4 F.Supp.2d at 494. In finding inequitable conduct, the Court concluded that SEL knew that the untranslated portions of the Canon '968 application disclosed these additional elements, and that SEL deliberately attempted to conceal the true significance of the Canon '968 application to ensure the issuance of the '636 patent. *See id.*

■ In its motion to reconsider, SEL argues unpersuasively that because the partial translation of Canon was prepared in connection with a prior patent application, and because its submission was thus required by Rule 98(c), 37 C.F.R. § 1.98(c), SEL's conduct in this regard cannot constitute inequitable conduct. In relying on Rule 98(c) to excuse the failure to submit a fully translated version to the PTO, SEL places more weight on the rule than it can bear. Rule 98(c) requires an applicant to submit any translations of a reference that they might possess. But that rule provides a floor for required submissions of translations of foreign applications, not a ceiling; it is by no means an excuse or license for concealing material portions of a prior art reference. Yet, SEL's submission of the partial translation combined with its brief statement of relevance does just that.[12] Thus, reliance on Rule

---

**10.** While SEL may disagree with the Court's application of the cumulative evidence standard, "mere disagreement does not support a Rule 59(e) motion." *See Hutchinson,* 994 F.2d at 1081.

**11.** Specifically, the untranslated portion of the Canon '968 application described the same TFT structure that *is found in the '636 patent:* a structure with the same intrinsic semiconductor layer made from amorphous silicon; the same channel region sandwiched between the insulators; and (in both the translated and the untranslated portions), the same silicon nitride gate insulator as claimed in the '636 patent. *See SEL,* 4 F.Supp.2d at 483. The untranslated portions of the Canon '968 application also provided the "frequent admonitions to prevent or limit atmo-

spheric impurities in semiconductor materials, which provide an express suggestion to employ teachings such as those found in the Tsai article or in the '423 or the '488 applications to reduce carbon, oxygen and nitrogen impurities below the levels claimed in the '636 patent." *See id.* Thus, the Court found by clear and convincing evidence that the "untranslated portions of the Canon '968 application contained information highly material to the prosecution of the '636 patent application as they, together with other information, establish a *prima facie* case of unpatentability." *See id.* at 484.

**12.** *See SEL,* 4 F.Supp.2d at 494 ("SEL's brief statement of relevance identifying only the silicon nitride gate as pertinent, coupled with the

98(a)(3) affords SEL no relief from the effects of its conduct.

In short, SEL's inequitable conduct with respect to the Canon '968 is an adequate and independent basis for finding the '636 patent unenforceable as a result of inequitable conduct;[13] SEL's arguments to the contrary are meritless.

## B. The Tsai Reference

■ *SEL I* proceeded on the premise that misrepresentations concerning the Tsai reference were made with respect to the '636 patent application, whereas in fact, they were made with respect to the related '455 and '494 applications.[14] Given this, SEL argues, the misrepresentations concerning the Tsai reference cannot support a finding of inequitable conduct with respect to the '636 patent, and SEL is therefore entitled to relief.[15]

As *SEL I* makes clear, SEL's arguments regarding the Tsai article constituted inequitable conduct because they were (i) knowingly contrary to SEL's own knowledge, (ii) invalid under scientific principles certainly known to Dr. Yamazaki, and (iii) inconsistent with SEL's other positions before the PTO. *SEL*, 4 F.Supp.2d at 484–86.[16] Equally clear is that these arguments constitute inequitable conduct in the context of the prosecution of the related '494 and '455 patent applications, for these applications, like the relat-

partial translation disclosing that element, certainly removed any incentive [for the examiner to secure a full translation].").

13. In *SEL I*, the Court found that credible expert testimony convincingly established that the fully translated Canon '968 application, when combined with the Tsai reference, rendered obvious the asserted claims of the '636 patent. *See SEL*, 4 F.Supp.2d at 484. Because the Tsai article did not individually create a *prima facie* case of obviousness, the failure to submit a fully translated version of the Canon '968 application is in and of itself sufficient to justify a finding of inequitable conduct.

14. *SEL I* set forth in some detail the facts regarding the relationship of some of the relevant patents and patent applications and attached a diagram which clarifies these relationships. *See SEL*, 4 F.Supp.2d at 480 and Appendix. In summary, the '636 patent results from continuation and divisional applications from the application that issued as the '132 patent. Specifically, the '494 application was a divisional application of the patent application that became the '132 patent; the '455 application was filed as a continuation application of the '494 application pursuant to PTO Rule 62, thus causing the automatic abandonment of the '494 application. The '953 application, which eventually became the '636 patent, was filed as a divisional application of the '455 application, pursuant to PTO Rule 60. Thus the priority date of the '636 patent relies on the chain of applications that includes the '132 patent, the '494 application and the '455 application. Further, the subject matter of the '636 patent is so closely related to the '132 patent that a terminal disclaimer was filed with respect to the '636 patent, giving it the expiration date of the '132 patent. Both the '132 and the '636 patents rely upon the May 18, 1984 filing date for SEL's Japanese laid-open Application No. 59100250 ("the '250 application"), which has a "one-to-one" relationship with both the '132 and '636 patents. Both the '132 and the '636

patents have the same inventor (Dr. Yamazaki), owner (SEL), disclosure, specification, and title.

15. SEL also contends that it is clear legal error to base a finding of inequitable conduct on arguments presented to the PTO in support of a patent application. SEL bases this contention on a misinterpretation of two distinguishable cases, neither of which stands for the proposition that, as a matter of law, arguments made to the PTO cannot constitute inequitable conduct. *See Akzo N.V. v. United States Int'l Trade Comm'n*, 808 F.2d 1471 (Fed.Cir.1986); *Hughes Aircraft Co. v. United States*, 215 U.S.P.Q. 787, 1982 WL 36740 (Ct.Cl.Trial Div.1982), *aff'd in part, rev'd in part*, 717 F.2d 1351 (Fed.Cir.1983). In *Akzo*, the Federal Circuit held that where neither a "proved material misrepresentation [n]or a proved intent to mislead" exists, the moving party does not meet its burden of proving inequitable conduct. 808 F.2d at 1482. Thus, by implication where, as here, material misrepresentations are made in a position advocated to the PTO with intent to mislead, inequitable conduct does exist. Likewise, *Hughes Aircraft* provides no support for SEL's contention. There, unlike the case at bar, the Court of Claims expressly found that the statements quoted by the defendant were neither untrue nor inconsistent with the defendant's prior positions. 215 U.S.P.Q. at 805, 1982 WL 36740.

16. Specifically, SEL's argument that the teachings of the Tsai article were primarily applicable to solar cells, not TFTs, was "contrary to its own knowledge, and inconsistent with its own previously stated position on an important issue before the PTO." *SEL*, 4 F.Supp.2d at 484–85. Further, SEL's attempt to distinguish the article on the basis of the direction of the current had no validity, and Dr. Yamazaki, SEL's president and majority shareholder, the inventor of the '636 patent, and a distinguished solid state physicist, surely knew that. *Id.*

ed '636 patent application, were prosecuted (i) long after the relevant knowledge was available and (ii) while SEL was advocating inconsistent positions to the PTO with respect to the U.S. No. 5,521,400 (" '400") patent.[17]

The question now presented, therefore, is whether inequitable conduct in the course of prosecuting the '494 and '455 applications can serve to invalidate the '636 patent, given that these applications are in the direct chain of divisional and continuation applications leading ultimately to the issuance of the '636 patent. More generally, the question is whether a patent can be rendered unenforceable as a result of inequitable conduct that occurred in the prosecution of related divisional and continuation applications earlier in the chain of applications that spawned the patent in issue. Analogous Federal Circuit authority points persuasively to the conclusion that under appropriate circumstances, inequitable conduct earlier in the direct patent chain can render the related ultimately-issued patent unenforceable.[18]

Analysis of the issue appropriately begins with *Fox Industries, Inc. v. Structural Preservation Systems, Inc.*, 922 F.2d 801 (Fed.Cir.1990), where the Federal Circuit broadly enunciated the guiding principle that "[t]he duty of candor extends through the patent's entire prosecution history," and that a breach of the duty of candor "may render unenforceable all claims which eventually issue from the same *or a related application.*" 922 F.2d at 803–04 (emphasis added).[19] This principle is not without limits. Pertinent Federal Circuit authority also teaches that the mere occurrence of inequitable conduct in connection with an application within a chain of applications is not enough to invalidate a patent issued as a result of a later application in the chain; instead, the earlier inequitable conduct in the chain must be related to the targeted claims of the ultimately-issued patent or patents sought to be enforced.[20] Thus, a patent that issues from a divisional or continuation application may be held unenforceable where (i) there is inequitable con-

**17.** The '494 application was filed in 1994; the '455 application was filed in 1995. The Tsai article, which would have been understood by persons of ordinary skill in the pertinent art to apply to TFT's as well as solar cells, was available from 1983. *See SEL,* 4 F.Supp.2d at 489. By 1984, through the '423 and '488 Japanese laid-open applications, Dr. Yamazaki had demonstrated that he recognized "a clear connection between solar cells and TFT's in that the importance of reducing impurities is applicable to both." *Id.* at 485. Moreover, the application for the '400 patent was filed in November 1994, and issued in May 1996, and thus any arguments SEL presented to the PTO during the prosecution of that patent must have been essentially contemporaneous with the arguments advanced in the prosecution of the '455 and '494 applications.

**18.** In any event, because SEL's inequitable conduct with respect to the Canon '968 application constituted an independent and adequate ground for the result reached in *SEL I,* no manifest injustice would result from enforcement of the April 15, 1998 Order holding the '636 patent unenforceable. Thus SEL's contention here concerning the Tsai reference, even if valid, would not satisfy the threshold requirement under Rule 59(e), Fed.R.Civ.P.

**19.** *Fox* involved a chain of related applications, the last of which led to the issuance of the challenged patent. There, the original patent attorney knowingly withheld material prior art

during the prosecution of earlier applications, but did not draft the pertinent claims as ultimately issued. *See Fox,* 922 F.2d at 803–04. The district court nonetheless found, and the Federal Circuit affirmed, that the attorney's failure to disclose that material prior art constituted inequitable conduct as to the ultimately-issued patent. *See id.* 922 F.2d at 804. The court also affirmed the district court's conclusion that the patent's inventor had intentionally withheld the material prior art throughout the chain of applications, including the application that led to the issuance of the challenged patent. *Id.*

**20.** *See Baxter Int'l, Inc. v. McGaw,* 149 F.3d 1321, 1332 (Fed.Cir.1998) (patent issued from divisional application not unenforceable "where the issued claims have no relation to the omitted prior art"); *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804, 809–11 (Fed.Cir. 1990) (patents-in-suit unenforceable where inequitable conduct in original application allowed successful arguments in prosecution of patents-in-suit not otherwise possible); *see also East Chicago Machine Tool Corp. v. Stone Container Corp.,* 181 U.S.P.Q. 744, 748 (N.D.Ill.1974), *vacated in part on other grounds,* 185 U.S.P.Q. 210 (N.D.Ill.1974); *Molins PLC v. Textron, Inc.,* 821 F.Supp. 1551, 1581 (D.Del.1992), *aff'd in part, vacated in part on other grounds,* 48 F.3d 1172, 1187 (Fed.Cir.1995); *Jack Frost Laboratories, Inc. v. Physicians & Nurses Mfg. Corp.,* 901 F.Supp. 718, 729 (S.D.N.Y.1995), *aff'd,* 124 F.3d 229, 1997 WL 592814 (Fed.Cir.1997).

duct with respect to the prosecution of an earlier related application in the chain leading to the challenged patent and (ii) the inequitable conduct relates to the asserted claims of that patent.[21] Were this not the rule, a party committing inequitable conduct could avoid the consequences of that conduct through a scheme of divisional and continuation applications. The law does not countenance such a manipulation of the patent process.

■ Application of this principle to the instant facts[22] compels the conclusion that SEL's inequitable conduct in connection with the '494 and '455 applications and the earlier '132 patent[23] renders the '636 patent unenforceable. Not only are the omitted prior art and misrepresentations directly relevant to the asserted claims of the '636 patent, but SEL's motivation in prosecuting that patent, i.e. to conceal its prior inequitable conduct rather than cure it, links the issued patent itself directly to the inequitable conduct. In the circumstances, therefore, SEL's inequitable conduct in connection with the '494 and '455 applications and the '132 patent fatally infects the '636 patent.

Seeking to avoid this result, SEL argues that it is enough that it complied with the PTO's disclosure requirements during the prosecution of the specific continuation application leading to the '636 patent. This argument fails factually and legally. It ignores SEL's inequitable conduct concerning the Japanese Canon '968 application, and beyond

this, is based on an incorrect understanding of the applicable disclosure requirements. It is not enough that by the time the '636 patent issued, SEL had disclosed the Tsai reference, the correct figure for silicon atomic density and the '423 and '488 Japanese laid-open applications, and had also apparently ceased actively advocating the invalid arguments with respect to the Tsai article. Settled authority makes clear that the duty of candor requires more to cure inequitable conduct. Specifically, *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556 (Fed.Cir. 1983), teaches that the applicant must (i) expressly advise the PTO of the misrepresentation's existence, (ii) advise the PTO of what the actual facts are and make clear that further examination in light thereof may be required if any PTO action has been based on the misrepresentation, and (ii) establish patentability on the basis of the factually accurate record. *Rohm & Haas*, 722 F.2d at 1572. In support of these cure requirements, the Federal Circuit stated,

It does not suffice that one knowing of misrepresentations in an application or in its prosecution merely supplies the examiner with accurate facts without calling his attention to the untrue or misleading assertions sought to be overcome, leaving him to formulate his own conclusions.

*Id.* 722 F.2d at 1572.[24] Inequitable conduct earlier in a chain of related patent applications must be cured in accordance with *Rohm & Haas* or it will continue to infect the

---

**21.** This principle is also consistent with PTO Rule 56, 37 C.F.R. § 1.56, which makes clear that no patent will be granted on any application "in connection with which" fraud or intentional misconduct occurred or was attempted.

**22.** Those facts are as follows: SEL, in prosecuting the '494 and '455 applications, intentionally distinguished the Tsai article and knowingly minimized its significance on the basis of invalid arguments. *See supra* n. 17 and accompanying text. Moreover, in its prosecution of the '132 patent, SEL knowingly (i) misrepresented the atomic density of amorphous silicon in order to persuade the examiner to allow the claims over the Nakagawa '477 application, and (ii) failed to disclose highly material prior art, specifically the Tsai reference and the '423 and '488 Japanese laid-open applications. *SEL*, 4 F.Supp.2d at 486–91. *SEL I* also makes clear that Dr. Yamazaki realized that SEL's conduct left the '132 patent

vulnerable, and sought a new patent, the '636 patent, hoping to insulate the '636 patent from the defects infecting the '132 patent that resulted from such conduct. *SEL*, 4 F.Supp.2d at 495.

**23.** The inequitable conduct associated with the prosecution of the '132 patent was previously treated only as Rule 404(b) evidence. *See SEL*, 4 F.Supp.2d at 487, n. 16 and accompanying text. Under the principles elucidated here, inequitable conduct in the course of the prosecution of the '132 patent constitutes an additional basis on which the '636 patent is unenforceable.

**24.** In *Rohm & Haas*, the record was devoid of any evidence showing that the PTO had been told that any misrepresentations had been made and precisely where they had been made. Given this, the court held that the "cure" was insufficient as a matter of law. *Id.* 722 F.2d at 1572–73.

process; cure cannot be achieved through manipulation of patent prosecution procedures, such as canceling or amending claims or filing continuation and divisional applications.[25] Nothing in the record suggests that SEL took any steps to cure the directly related inequitable conduct; because it pursued a separate, related application instead of seeking reissuance under 35 U.S.C. § 251, for which it was probably not eligible,[26] SEL did not surrender and amend the '132 patent, identify its previous omissions, comply with the requisite cure requirements and establish patentability on a clearly corrected record.

In these circumstances, the inequitable conduct that occurred earlier in the patent chain renders a later patent unenforceable. Thus, the inequitable conduct in the '636 patent chain, i.e. in the prosecution of the '132 patent and the '494 and '455 patent applications, provides an additional alternate and independent ground on which the '636 patent is unenforceable.

### III.

SEL has not established any clear error of law in connection with the April 15, 1998 Order rendering the '636 patent unenforceable. Nor has it shown that a manifest injustice will result from enforcement of that order. Indeed, the analysis here confirms that the inequitable conduct that occurred with respect to the '494 and '455 applications and the '132 patent is a separate and independent ground rendering the '636 patent unenforceable that supplements the separate and independent ground found in the April 15, 1998 Memorandum Opinion, namely, SEL's inequitable conduct with respect to the Canon '968 application.

An appropriate Order will issue.

25. See, e.g., Baxter, 149 F.3d at 1331 (Fox reflects principle that "omission of a reference material to certain claims cannot be cured simply by canceling or amending these claims during prosecution so that they do not issue in the same form in which they were drafted"); Driscoll v. Cebalo, 731 F.2d 878, 884 (Fed.Cir.1984) (nondisclosure of material prior art during prosecution of parent application not excused by substituting related claims in later application without calling to PTO's attention earlier failure to disclose).

### ORDER

The matter came before the Court on plaintiff SEL's motion to reconsider its April 15, 1998 Order.

For the reasons stated in the accompanying Memorandum Opinion, plaintiff's motion is **DENIED.**

The Clerk is directed to place this matter among the ended causes.

26. Under 35 U.S.C. § 251, a patentee who inadvertently and without deceptive intent made errors before the PTO resulting in an invalid or inoperative patent may surrender the patent, and after disclosing and correcting the errors and amending the application, may seek reissuance of the patent for the remaining unexpired term of the patent. See Application of Clark, 522 F.2d 623, 623, 627 (C.P.A.1975).