Nader ASGHARI–KAMRANI and Kamran Asghari–Kamrani, Plaintiffs,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION, Defendant.

CIVIL NO. 2:15cv478

United States District Court, E.D. Virginia, Norfolk Division.

Signed December 9, 2016

Krystyna Colantoni, Reece Werner Nienstadt, Irene Huei–Min Chen, Lau-

rence Michael Sandell, Lei Mei, Mei & Mark LLP, Washington, DC, Jeffrey Melvin Pearson, Mei & Mark LLP, Boca Raton, FL, Dirk Harris McClanahan, McClanahan Powers PLLC, Vienna, VA, for Plaintiffs.

Matthew Carl Berntsen, David Bruce Kuznick, Grant Thomas Rice, Fish & Richardson, P.C., Boston, MA, Ahmed Jamal Davis, Fish & Richardson PC, Washington, DC, David Richard Francescani, Michael T. Zoppo, Fish & Richardson, P.C., New York, NY, for Defendant.

## OPINION AND ORDER

ROBERT G. DOUMAR, UNITED STATES DISTRICT JUDGE

This matter comes before the Court upon Nader Asghari–Kamrani and Kamran Asghari–Kamrani's ("Plaintiffs") Motion to Dismiss for Failure to State a Claim. ECF No. 204. For the reasons stated herein, Plaintiffs' Motion to Dismiss is **DENIED**.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. PROCEDURAL HISTORY

As the result of the prolonged procedural history in this case, this Court will only recount the relevant portions. Plaintiffs filed their initial complaint against United Services Automobile Association ("USAA" or "Defendants") for patent infringement pursuant to 35 U.S.C. § 271 on October 30, 2015. ECF No. 1. On April 12, 2016, Plaintiffs filed a Second Amended Complaint. ECF No. 70. USAA filed a Motion to Dismiss for Failure to State a Claim on April 28, 2016. ECF No. 86. Of importance to the instant Motion, on April 28, 2016, USAA filed an Answer and Counterclaims to Plaintiffs' Second Amended Complaint; this Answer contains the Third Counterclaim (also the Eighth Affirmative Defense)—concerning alleged inequitable conduct by the Plaintiffs—that is at issue. ECF No. 88. Plaintiffs then filed a Motion to Dismiss Counterclaims on May 16, 2016. ECF No. 104.

On July 5, 2016, this Court found that the claims of the patent-in-suit were invalid because they were directed to an abstract idea and thus ineligible for patent protection under 35 U.S.C. § 101. Because the claims were invalid, Plaintiffs failed to state a claim for relief; accordingly, this Court granted USAA's Motion to Dismiss for Failure to State a Claim. ECF No. 140.

At the same time, the Court also dismissed as moot USAA's Counterclaims. Id. On July 19, 2016, USAA filed a Motion for Attorney's Fees, as well as a Motion to Amend/Correct the Judgment. ECF Nos. 151, 153. On August 15, 2016, this Court granted the Motion to Amend/Correct the Judgment to reflect that USAA's Third Counterclaim is not moot because USAA seeks attorney's fees as part of the Counterclaim. ECF No. 185.

On September 20, 2016, this Court held a hearing on Plaintiffs' Motion to Dismiss the Counterclaim. ECF Nos. 104, 195. At the hearing, the Court ordered USAA to file an Amended Counterclaim. ECF No. 196. On October 4, 2016, USAA filed its Amended Counterclaim (styled as "USAA's First Amended Counterclaims to Plaintiffs' Second Amended Complaint"). ECF No. 200. On October 18, 2016, Plaintiffs filed an Answer, ECF No. 206, as well as a Motion to Dismiss USAA's Amended Counterclaim (styled as "Motion to Dismiss USAA's Third Amended Counterclaim"), ECF No. 204. USAA then filed an Opposition to the Motion to Dismiss for Failure to State a Claim on November 3, 2016, ECF No. 210, to which Plaintiffs filed a Reply on November 10, 2016, ECF No. 211. On November 23, 2016, Plaintiffs

filed a Motion for Leave to File a Sur-Reply to Plaintiffs' Motion to Dismiss, ECF No. 216, which this Court granted on November 30, 2016, ECF Nos. 217, 218.

## B. FACTUAL HISTORY

Plaintiffs are the inventors of the previously sued-upon patent: Patent No. 8,266,-432 ("the '432 patent"), filed on September 15, 2008 and issued on September 11, 2012. ECF No. 70, Ex. A. The patent is a method and system for the identification and authentication of users over the Internet. A "User"—for example, a potential customer of an online retailer—signs up with a "Central–Entity" and provides his or her personal and financial information. The Central Entity creates an account for the User and provides a Username and Password to the User. When the User wants to access the Central–Entity, the Central–Entity employs the Username and Password and also creates a "dynamic, non-predictable and time-dependent Secure-Code" for the User when the User requests it. The Central–Entity keeps a record of the SecureCode. The User may then present his UserName and SecureCode to an "External–Entity." The External–Entity will then forward the UserName and SecureCode to the Central–Entity. The Central–Entity will validate the information and inform the External–Entity of the result. ECF No. 140, at 2–4.

As noted above, this Court previously held that the claims of the '432 patent at issue were invalid because they were directed to an abstract idea and thus ineligible for patent protection under 35 U.S.C. § 101. Id. at 5–13.

Currently at issue are representations made by the Plaintiffs to the United States Patent and Trademark Office ("PTO") during the prosecution of the '432 patent. Such representations concern at least three other patents in the same family of patents as the '432 patent: (1) Patent No. 7,356,837 ("the '837 patent"), filed on August 28, 2001 and issued on April 8, 2008; (2) Patent No. 7,444,676 ("the '676 patent"), filed on September 30, 2005 and issued on October 28, 2008; and (3) Patent No. 8,281,129 ("the '129 patent"), filed on January 18, 2006 and issued on October 2, 2012. ECF No. 200, Ex. 5, at 22.

The relationship between these patents is pertinent to the disposition of the instant Motion. In essence, Plaintiffs have either previously claimed or are currently claiming that the '432 patent is entitled to the benefit of the earlier filing date of the '837 patent (that is, August 28, 2001) because of one of two claimed chains of priority within this family of patents: either (1) the '432 patent claims priority to the '676 patent as a continuation or continuation-in-part of the '676 patent, see infra IV.B, which in turn claims priority to the '837 patent as a continuation or continuation-in-part of the '837 patent; or (2) the '432 patent claims priority to the '129 patent as a continuation or continuation-in-part of the '129 patent, which in turn claims priority to the '837 patent as a continuation or continuation-in-part of the '837 patent. Id. at 22–23. USAA alleges that Plaintiffs made material misrepresentations to the PTO during the prosecution of the '432, '676 and '129 patent applications sufficient to render the '432 patent unenforceable. ECF No. 200, at 3.

## II. ATTORNEY'S FEES

As discussed above, the issue of inequitable conduct comes before the Court as the result of USAA's Motion for Attorney's Fees. ECF Nos. 151, 185. The Patent Act includes its own attorney's fees provision, which authorizes district courts to award "reasonable attorney fees to the prevailing party" in "exceptional cases." 35 U.S.C. § 285 (1982). Exceptional cases are

those that stand out "from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., — U.S. —, 134 S.Ct. 1749, 1756, 188 L.Ed.2d 816 (2014). District courts "may determine whether a case is 'exceptional' in a case-by-case exercise of their discretion, considering the totality of the circumstances." Id. A totality of the circumstances assessment may include a consideration of "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and ... considerations of compensation and deterrence." Id. at 1756 n. 6. Such an assessment also includes a consideration of unreasonable conduct that is not "independently sanctionable." Id. at 1751.

■ Inequitable conduct "may constitute the basis for an award of attorneys' fees under 35 U.S.C. § 285 (1982)." A.B. Chance Co. v. RTE Corp., 854 F.2d 1307, 1312–13 (Fed. Cir. 1988). Indeed, a district court has erred when it "[does] not make a determination of whether or not [the patentee has] engaged in inequitable conduct before the PTO." Id.

USAA has generally set forth three grounds for attorney's fees: (1) Plaintiffs had no factual or legal basis to file their multiple complaints, ECF No. 152, at 5; (2) Plaintiffs engaged in bad-faith litigation conduct, id. at 10; and (3) Plaintiffs and their agents engaged in inequitable conduct before the PTO throughout the prosecution of the '432 patent, ECF No. 154, at 3–6. This third claim of inequitable conduct forms the basis of USAA's Third Counterclaim, and is currently at issue in both USAA's Amended Counterclaim and Plaintiffs' Motion to Dismiss. ECF Nos. 200, 204.

## III. LEGAL STANDARDS

### A. STANDARD FOR INEQUITABLE CONDUCT

■ "Every patent applicant owes a duty of candor and good faith to the PTO." Arrow International, Inc. v. Spire Biomedical, Inc., 635 F.Supp.2d 46, 57 (D. Mass. 2009) (internal citations omitted). See also 37 C.F.R. § 1.56(a). A breach of this duty constitutes inequitable conduct and "renders all claims of the patent involved unenforceable." Synthon IP, Inc. v. Pfizer Inc., 472 F.Supp.2d 760, 775–76 (E.D. Va. 2007) (internal citations omitted). Such impermissible inequitable conduct includes, inter alia, "affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995).

■ This duty extends throughout the patent's entire prosecution history. Semiconductor Energy Laboratory Co., Ltd. v. Samsung Electronics Co., Ltd., 24 F.Supp.2d 537, 543 (E.D. Va. 1998), aff'd 204 F.3d 1368 (Fed. Cir. 2000). Furthermore, the applicable federal regulations make clear that the duty of candor applies to "[e]ach individual associated with the filing and prosecution of a patent application ...." 37 C.F.R. § 1.56 (stating that "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [PTO], which includes a duty to disclose to the [PTO] all information known to that individual to be material to patentability"). The regulations at 37 C.F.R. § 1.56 define "[i]ndividuals associated with the filing or prosecution of a patent application" as including:

(1) Each inventor named in the application;

(2) Each attorney or agent who prepared or prosecutes the application; and (3) Every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application. See also Molins, 48 F.3d at n. 6 (noting that "the duty to disclose information material to patentability rests on the inventor, on each attorney or agent who prepares or prosecutes an application and on every other individual who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee, or with anyone to whom there is an obligation to assign the application.")

 To establish inequitable conduct, the accused infringer must demonstrate by clear and convincing evidence that the applicant: "(1) [M]ade an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) did so with the intent to deceive the PTO." Cancer Research Tech. Ltd. v. Barr Labs., Inc., 625 F.3d 724, 732 (Fed. Cir. 2010).

 Furthermore, the Federal Circuit requires a showing of "but-for materiality" to find inequitable conduct—that is, but for the inequitable conduct, the PTO would not have issued the patent. Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1291 (Fed. Cir. 2011). There is one exception to the requirement of but-for materiality: in cases in which the patentee has engaged in affirmative egregious misconduct, such as filing an unmistakably false affidavit, such misconduct is deemed material. Id. at 1293.

**B. STANDARD FOR THE MOTION TO DISMISS**

 All patent complaints filed after December 1, 2015 are subject to the normal pleading standards of Federal Rule of Civil Procedure 8(a). Order Amending Fed. R. Civ. P. (Apr. 29, 2010). The function of a motion to dismiss under Rule 12(b)(6) is to test "the sufficiency of a complaint." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). "[I]mportantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive such a motion, the complaint must contain facts sufficient 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" Haley, 738 F.3d at 116. When reviewing the legal sufficiency of a complaint, the Court must accept "all well-pleaded allegations in the plaintiff's complaint as true" and draw "all reasonable factual inferences from those facts in the plaintiff's favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). Legal conclusions, on the other hand, are not entitled to the assumption of truth if they are not supported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). However, a motion to dismiss should be granted only in "very limited circumstances." Rogers v. Jefferson–Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

 In addition, in patent cases, a defense of inequitable conduct triggers the more stringent pleading requirements of Fed. R. Civ. P. 9(b). Fed. R. Civ. P. 9(b) first requires that the defendant also "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind"— that is, the intent to deceive the PTO. Exergen Corp. v. Wal–Mart Stores, Inc., 575 F.3d 1312, 1327 (Fed. Cir. 2009). To infer such intent, a district court may con-

sider not only the alleged misrepresentations made during the prosecution of the patent at issue, but to a "pattern of false and misleading statements during prosecution of related patents" that "make[ ] the inference stronger." Intellect Wireless, Inc. v. HTC Corp., 732 F.3d 1339, 1344–1345 (Fed. Cir. 2013). Second, an inequitable conduct claim must identify "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Exergen, 575 F.3d at 1326.

## IV. USAA'S CLAIMS OF INEQUITABLE CONDUCT

USAA alleges inequitable conduct in front of the PTO in relation to the '432 patent and three related patents: the '129 patent, the '676 patent, and the '837 patent.[1] USAA alleges three specific instances of inequitable conduct that render the '432 patent unenforceable: (1) to the extent the '676 patent supports any claim of the '432 patent, Plaintiffs filed a false certification in the form of a Non–Publication Request for the '676 patent, ECF No. 200, at 3; (2) to the extent the '129 patent supports any claim of the '432 patent, Plaintiffs filed a false certification in the Form of a Non–Publication Request for the '129 patent, id. at 5; and (3) Plaintiffs and their agents materially misrepresented the priority chain of the '432 patent, id. at 6. (As the first two alleged instances of inequitable conduct concern similar activity, they will be discussed together.)

1. Previously, Plaintiffs only claimed the following priority chain: the '432 patent claims priority to the '676 patent, which in turn claims priority to the '837 patent. However, Plaintiffs have since also claimed that the '432 patent claims priority to both the '676 patent and the '129 patent, both of which in turn claim priority to the '837 patent. ECF No. 194.

## A. FALSE CERTIFICATIONS IN THE FORM OF NON-PUBLICATION REQUESTS

First, USAA alleges the PTO applications submitted with the '676 and '129 patents contained false certifications in the form of Non–Publication Requests. A nonpublication request requires that the patent applicant certify "invention disclosed in the application has not and will not be the subject of an application filed in another country, or under a multilateral international agreement." 35 U.S.C.A. § 122(b)(2)(B)(i). The parties dispute whether the Non–Publication Requests filed with the applications for the '129 and '676 patents were false at the time of their filing.

### 1. Non–Publication Requests

Prior to the enactment of 35 U.S.C.A. § 122 through the American Inventors Protection Act of 1999, Pub. L. No. 106–113, § 1000(a)(9), 113 Stat. 1536, 1501A–561 (1999) ("AIPA"), U.S. patent applications were not published until they were issued as patents. In contrast, most foreign applications were published eighteen months after the earliest filing date for which a benefit was sought.[2] 35 U.S.C.A. § 122 changed domestic law such that "each application for a patent shall be published ... promptly after the expiration of a period of 18 months from the earliest filing date for which a benefit is sought under this title"—including U.S. patent applications for previously foreign-published applications. This was prompted by a Con-

2. Jeffrey A. Sadowski & Trent K. English, Extending Provisional Rights Beyond 35 U.S.C. § 154(D), 87 J. Pat. & Trademark Off. Soc'y 361, 361 (2005). Once published, the patent application would become part of the body of published prior art, available to the public for further research and improvement but subject to a license from and royalties to the owner of the patent application for commercial exploitation. 35 U.S.C.A. § 154(d).

gressional desire to "ensure American inventors [would] be able to see the technology that our foreign competition is seeking to patent much earlier than [was previously] possible." H.R. Rep. No. 106–464, at 128 (1999) (Conf. Rep.).

However, an applicant may keep the application from being published if, among other exceptions, he or she files a non-publication request—that is, he or she "makes a request upon filing, certifying that the invention disclosed in the application has not and will not be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication of applications 18 months after filing, the application shall not be published." 35 U.S.C.A. § 122(b)(2)(B)(i) (emphasis added). Thus, the new law required publication of U.S. applications that had foreign counterparts eighteen months from the earliest filing date unless a non-publication request was filed.

However, if the applicant has already filed the patent application abroad and "such foreign filed application[ ] corresponding to an application filed in the [PTO] or the description of the invention in such foreign filed application[ ] [was] less extensive than the application or description of the invention in the application filed in the [PTO]," 35 U.S.C.A. § 122(b)(2)(B)(i) permits the applicant to submit a "redacted copy of the application filed in the [PTO] eliminating any part or description of the invention in such application that is not also contained in any of the corresponding applications filed in a foreign country." Thus, no information that has been added since the publication of the foreign-filed application becomes public.

### 2. USAA's Claims of Inequitable Conduct

USAA alleges that on August 29, 2001, Plaintiffs filed a patent application with the World Intellectual Property Office ("WIPO") that was eventually published on March 13, 2003 with the International Publication Number WO 03/021837. ECF No. 200, Ex. 1. According to USAA, this Application and the '837 patent are directed to the same invention (that is, they are counterparts of one another). ECF No. 200, at 4.

On September 30, 2005, Plaintiff Nader Asghari–Kamrani signed a Non–Publication Request for the '676 patent. Similarly, on January 18, 2006, Plaintiff Nader Asghari–Kamrani signed a Non–Publication Request for the '129 patent. ECF No. 200, Exs. 2–3 (both containing a certification stating: "I hereby certify that the invention disclosed has not and will not be the subject of an application filed in another country, or under a multilateral agreement, that requires publication at eighteen months after filing."). According to USAA, the filing of the Non–Publication Requests presents one of two results. The first possible result is that the '676 patent or '129 patent are different inventions than the '837 patent, and so the priority chain for the '432 patent is broken such that the '432 patent cannot obtain the benefit of the '837 patent filing date through the '676 patent or '129 patent. The second possible result is that Plaintiffs did not truthfully certify, as is required by 35 U.S.C. § 112, that the invention in the '837 patent was not and would not be the subjection of a foreign-filed application (in which case, the '129 and '676 patents are considered abandoned). ECF Nos. 210, at 9; 218, at 2.

USAA further alleges that the Plaintiffs and their agents—Bijan Tadayon, Veronica–Adele Dela Roca Cao, Marianna Hann, Tiffany Little, and Michael Fortkort—later failed, while prosecuting the '432 Patent, to rescind the Requests and engaged in efforts to conceal them. ECF No. 200, at 4, 6. USAA claims that the Plaintiffs and

the above-named agents did so despite their knowledge of the false certification contained in the Non–Publication Requests, thus violating 37 C.F.R. § 11.18(b), which requires that all statements contained in any paper presented to the PTO "made therein of the party's own knowledge are true." USAA further argues that Plaintiffs and their agents did so to avoid the penalties associated with violating 37 C.F.R. § 11.18(b)—had the PTO known of such violations prior to the issuance of the '432 patent, the application proceedings would have been subject to termination pursuant to 37 C.F.R. § 11.18(c)(5) (thus rendering such conduct material). ECF No. 200, at 4, 6.

Plaintiffs make two central arguments to support their contention that the Non–Publication Requests are not demonstrative of inequitable conduct. First, Plaintiffs claim that any non-publication request only requires that the applicant certify that the application for the patent in question has not and will not be the subject of an application filed in another country, not that no other application in the family of that application (that is, the overall invention) has not and will not be the subject of a foreign-filed application. Plaintiffs specify that USAA only alleges that a foreign counterpart of the '837 patent was filed, not that a foreign counterpart of the '676 patent or '128 patent was filed. Thus, Plaintiffs argue, the non-publication requests made for the '676 patent and '129 patent were proper at the time they were filed. ECF No. 205, at 21–23.

In support of this contention, Plaintiffs look to the Manual of Patent Examining Procedure ("MPEP"), which requires (1) that "the application under 35 U.S.C. § 111(a) has not been the subject of a foreign or international application filed in another country, or under a multilateral international agreement" and (2) that it is not the applicant's intent that "the application under 35 U.S.C. § 111(a) ... be the subject of a foreign or international application ..." MPEP § 1122 (emphasis added). Furthermore, MPEP § 1122 states: "When a foreign or [Patent Cooperation Treaty ("PCT")] application is filed first, and a U.S. application is filed thereafter with an (improper) nonpublication request, the [PTO] will not consider the U.S. application as abandoned for having made the nonpublication request."[3] Thus, Plaintiffs argue, even if USAA's interpretation of the statute were correct, USAA would still fail to establish but-for materiality.

The Plaintiffs also look to legislative history to support their interpretation of 35 U.S.C.A. § 122. ECF No. 211, at 5. Plaintiffs claim the stated policy rationale behind the then-new publication requirements[4] is consistent with their interpretation that the specific application in a nonpublication request cannot be the subject of an application in another country. Plaintiffs appear to argue that because the policy was to keep American inventors apprised of patent applications with foreign-filed counterparts—and because only the '837 patent had a foreign-filed counterpart, but had already been published in the U.S. before the '676 and '129 applica-

3. However, the section continues:

This is because the statute only provides for an application to be regarded as abandoned when the applicant fails to notify the Office within 45 days of a subsequently filed application that is directed to the same subject as the invention of the U.S. application in another country, or under a multilateral agreement, that requires eighteen-month publication of applications.

4. The purpose of the law was to "ensure American inventors [would] be able to see the technology that our foreign competition is seeking to patent much earlier than [was previously] possible." H.R. Rep. No. 106–464, at 128 (1999) (Conf. Rep.).

tions were filed—filing the Non–Publication Requests for the '676 and '129 patents was consistent with such a policy. As the '676 and '129 patents did not have foreign-filed counterparts, they did not, according to Plaintiffs' interpretation of the policy rationale, need to be published. Id.

In response, USAA contends that the plain language of the non-publication requests; the plaint language of the controlling statute, 35 U.S.C.A. § 122; and the same legislative history that Plaintiffs cite clearly state that the invention in a non-publication request cannot be foreign-filed. ECF Nos. 210, at 10; 218, at 1. See, e.g., H.R. REP. No. 106–464, at 128 (1999) (Conf. Rep.)[5] (a non-publication request must "state that [the] invention has not and will not be the subject of an application filed in a foreign country").

Second, USAA argues that the MPEP is not law and Plaintiffs cannot use it to support any position that conflicts with the law. ECF No. 210, at 10. Instead, USAA argues that the language that controls is from 37 C.F.R. § 1.213 and 35 U.S.C. § 122(b)(2)(B), which require that a certification that "the invention disclosed in the application" (emphasis added) not be the subject of an application filed in a foreign country. ECF No. 210, at 10. Third, USAA argues that even the MPEP's own language either makes reference to such controlling statutory and regulatory language

from 37 C.F.R. § 1.213 and 35 U.S.C.A. § 122(b)(2)(B) or clarifies that the certification in the non-publication request refers to an invention, not the specific application. ECF No. 210, at 10–11. (For example, MPEP § 1122 (1) clarifies that the certification in the non-publication request relates not to a specific application, but whether the application has "been the subject of a foreign or international application" and (2) discusses the "invention disclosed in the application.")

### 3. Analysis

■ As a threshold matter, this Court notes there is little guidance with respect to the interpretation of 35 U.S.C.A. 122(b)(2)(B)(i)'s language that the "invention disclosed in the application has not and will not be the subject of an application filed in another country, or under a multilateral international agreement" (emphasis added). The AIPA does not provide a definition of "invention,"[6] and definitions found in other provisions of patent law are unhelpful. For example, Section 100 of the Patent Act defines "invention" as an "invention or discovery." 35 U.S.C.A. § 100. Section 101 of the Patent Act defines the subject matter eligible for patent protection as "any new and useful process, machine, manufacture, or composition of matter," or any "improvement thereof." 35 U.S.C.A. § 101. Furthermore, when crafting a specification, 35 U.S.C.A. § 112 man-

5. USAA also points to the same Congressional Conference Report for the proposition that when an applicant files a U.S. patent application containing more material than was disclosed in a prior international application, the applicant may restrict the publication by the USPTO to only the cumulative details of what was published in the foreign applications (thus keeping any additional improvements from publication for a certain time period). However, "[a]ny description contained in at least one of the foreign filings … may not be excluded from publication in the corresponding U.S. patent application." H.R. REP. No.

106–464, at 128 (1999) (Conf. Rep.). Thus, USAA concludes, unless the '676 and '129 patents—the subjects of the Non–Publication Requests—did not contain any description found in the foreign patent filing of the '837 patent, the Non–Publication Requests were false. ECF No. 217, at 2.

6. See Jay Zhang, Patent Application Publication Under § 122(b): A New Adventure with Unforeseen Consequences, 85 J. Pat & Trademark Off. Soc'y 715, 717 (2003).

dates that it shall "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention" (emphasis added). Given such ambiguity in the definition of "invention," the subjectivity involved in construing what may or may not be considered a patentable invention, and the MPEP's language that the "application" not be the subject of the foreign filing, the Court understands the interpretive space in the statute for Plaintiffs' argument.[7]

Nonetheless, the Court is at this time unpersuaded by Plaintiffs' argument for at least three reasons. First, the plain language of the controlling statute and the application for a non-publication request both state that the applicant must certify that the invention has not been and will not be the subject of foreign filing. Second, the Congressional Record cited by Plaintiffs to determine the purpose of the statute similarly contains in it language requiring that the invention not be the subject of a foreign filing. Third and finally, the Court believes that 35 U.S.C.A. § 122(b)(2)(B)(v) would be rendered superfluous if this Court were to accept Plaintiffs' reading of the statute. 35 U.S.C.A. § 122(b)(2)(B)(v) provides in part:

> If an applicant has filed applications in one or more foreign countries, directly or through a multilateral international agreement, and such foreign filed applications corresponding to an application filed in the Patent and Trademark Office or the description of the invention in such foreign filed applications is less extensive than the application or description of the invention in the application filed in the Patent and Trademark Office, the applicant may submit a redacted copy of the application filed in the Patent and Trademark Office eliminating any part or description of the invention in such application that is not also contained in any of the corresponding applications filed in a foreign country.

There would be no reason for this section if an applicant could withhold publication of a particular application that warranted non-publication. Instead, the most consistent reading of 35 U.S.C.A. § 122 that gives meaning to all of its parts, including § 122(b)(2)(B)(v), is that if the invention has previously been the subject of a foreign-filed application, then another application in that family must be published. However, pursuant to § 122(b)(2)(B)(v), the applicant may choose to publish a redacted version of the application that is limited to what has already been disclosed in the prior foreign-filed application.[8] This

**7.** See also Arrow International, Inc. v. Spire Biomedical, Inc., 635 F.Supp.2d 46, 57 (D. Mass 2009) (discussing an inequitable conduct claim involving the improper filing of "foreign patent applications for the invention disclosed" (emphasis added) for a particular patent after a non-publication request had been filed for that same patent). This Court does not believe Arrow stands for the proposition that 35 U.S.C.A. § 122 requires that the application not be subject of a foreign filing because the improperly-filed foreign patent applications in that case were filed after the non-publication request had been filed for the patent-in-suit, and both filings were directed to the same patent, thus rendering the use of

"application" interchangeable with "invention."

**8.** For an illustration of this result that almost precisely mirrors the instant matter, see Zhang, supra note 6, at 720–21:

> Applicant first files a U.S. application B and a corresponding PCT application P, both disclosing invention X. Subsequently, Applicant files a [continuation in part] including one additional embodiment Y. Assuming Applicant does not wish to publish the additional embodiment early, can he submit a non-publication request upon filing the [continuation in part]? In submitting such a

would <u>also</u> be consistent with the Congressional intent to keep American inventors apprised of foreign-filed patents. Thus, for the time being, this Court is unpersuaded by the contention that 35 U.S.C.A. § 122 requires that the <u>application</u> not be the subject of a foreign filing rather than the <u>invention</u>.

### a. Specific Intent

 This Court finds that USAA has sufficiently pleaded specific intent with respect to the claim of inequitable conduct in the Non–Publication Requests. As discussed above, while Fed. R. Civ. P. 9(b) permits knowledge and intent to be averred generally, inequitable conduct allegations must include sufficient underlying facts "from which à court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." <u>Exergen</u>, 575 F.3d at 1328–29.

USAA's inequitable conduct allegations include sufficient facts for the Court to reasonably infer that the Plaintiff Nader Asghari–Kamrani (1) knew of the withheld material information or the falsity of the material misrepresentation and (2) withheld or misrepresented this information with a specific intent to deceive the PTO. Mr. Asghari–Kamrani, as one of the inventors of the '837 patent, was also one of the listed applicants and inventors on the application for the counterpart filed with the WIPO in 2001. ECF No. 200, Ex. 1. Thus, by the time he signed the Non–Publication Requests for the '676 and '129 patents in, respectively, 2005 and 2006, ECF No. 200, Exs. 2–3, he would have known, based on the facts pled, that the invention had been the subject of a foreign filing. Furthermore, the certification Mr. Asghari–Kamrani signed for the Non–Publication Requests clearly stated so. <u>Id.</u> Thus, based on Mr. Asghari–Kamrani's signing of the Requests despite his knowledge of the foreign-filed counterpart for the '837 patent, the most reasonable inference for this Court is that he signed the Requests with the intent to deceive the PTO. Altogether, USAA has pled sufficient facts to infer both knowledge and intent on the part of Plaintiff Nader Asghari–Kamrani.

As for the failure to rescind the Requests by Plaintiffs and Plaintiffs' agents, including Bijan Tadayon, Veronica–Adele Dela Roca Cao, Marianna Hann, Tiffany Little, and Michael Fortkort, USAA has pled sufficient facts for the Court to infer knowledge of the false certifications and intent to deceive the PTO. USAA has pled at least thirty-two specific filings with the PTO by Plaintiffs and Plaintiffs' agents during the prosecution of the '432 patent (to be discussed further below with respect

---

request, he or she will have to certify that "that the <u>invention disclosed</u> in the application <u>has not been and will not</u> be the subject of <u>an application filed</u> in a foreign country" or in under a multilateral agreement that requires publication of applications at 18 months (e.g., a PCT application). X certainly is "the subject" of the PCT application P. But is X "the invention disclosed" in the [continuation in part]? Applicant may argue that he does not claim X in the [continuation in part] and does not regard X as "the invention disclosed" in the [continuation in part]. However, note that

Applicant can always claim X in the CIP. Regardless of the ambiguity, if Applicant does claim X in the [continuation in part], the [continuation in part] will have to be published.

In this situation, 35 U.S.C. § 122(b) permits Applicant to redact the CIP application to remove any information that is not in the PCT application. The redacted copy would be essentially identical to the previously filed Application B. Since B has already been published, the publication of the redacted copy does not add any additional information to public knowledge ...

to the material misrepresentation claim). ECF No. 200, at 8–23. Given the importance of the priority claims to the prosecution of the '432 patent, it is reasonable to infer that Plaintiffs and their agents would have known of the Non–Publication Requests and, consequently, the allegedly false certifications.

Furthermore, had the PTO known of the material misrepresentation in the Non–Publication Requests and the manner in which the Non–Publication Requests would have affected the priority claims, see supra pp. 715–16,[9] the PTO may have either (1) determined that the '432 patent could not benefit from the '837 filing date through either the '676 or '129 patents or (2) deemed such misrepresentations a violation of 37 C.F.R. § 11.18(b) (requiring that all "statements made ... of the party's own knowledge are true"), and terminated the '432 prosecution proceedings pursuant to 37 C.F.R. § 11.18(c)(5). ECF No. 200, at 4, 6. Given Plaintiffs' and Plaintiffs' agents' duty of candor to the PTO and the materiality of these misrepresentation to the prosecution of the '432 patent, it is further reasonable to infer that the Plaintiffs and their agents withheld such information with the intent to deceive the PTO with respect to the prosecution of the '432 patent.

Thus, USAA has pled sufficient facts for this Court to infer knowledge and intent.

### b. Materiality

▆▆▆ Likewise, USAA has sufficiently pleaded a material misrepresentation or omission, see supra note 9. Fed. R. Civ. P. 9(b) further requires the pleading to "iden-

tify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Exergen, 575 F.3d at 1328.

First, USAA's Amended Counterclaim identifies specific individuals—the Plaintiffs and their agents Bijan Tadayon, Veronica–Adele Dela Roca Cao, Marianna Hann, Tiffany Little, and Michael Fortkort—who allegedly engaged in the inequitable conduct. ECF No. 200, at 4–6. Thus, the pleading sufficiently identifies the "who" of the material misrepresentation or omission.

Defendant has also clearly identified the "what," "when," and "where" by detailing specific filings with the PTO, including (1) the filing of the Non–Publication Requests on September 30, 2005 and January 18, 2006 and (2) the failure to rescind the Requests throughout filings for the '432 patent from 2008 through 2012 despite knowledge of the misrepresentation. Id. at 4–23.

Finally, Defendant has sufficiently pleaded "how" a material misrepresentation or omission occurred: according to USAA, by signing the false certifications in the Non–Publication Requests and failing to rescind such Requests, Plaintiffs and their agents had knowledge of the falsity of the Requests and the manner in which such Requests would have affected the priority claims for the '432 patent, see supra note 9, yet refused to disclose such information to the PTO despite a known duty of candor. Furthermore, USAA has also sufficiently pled how Plaintiffs and their attorneys refrained from notifying

---

9. According to USAA, the result of the filing of the Non–Publication Requests is that either: (1) the '676 patent or '129 patent are different inventions than the '837 patent (and so the '432 patent cannot obtain the benefit of the '837 patent priority date through the '676 patent or '129 patent); or (2) Plaintiffs did not truthfully certify, as is required by 35 U.S.C. § 112, that the invention in the '837 patent was not and would not be the subjection of a foreign-filed application (in which case, the '129 and '676 patents are considered abandoned). ECF No. 210, at 9.

the PTO of this material omission in order to avoid the penalties associated with violating 37 C.F.R. § 11.18(b) (requiring that all "statements made ... of the party's own knowledge are true"). Had the PTO known of this false certification, the PTO may have terminated the '432 patent prosecution proceedings pursuant to 37 C.F.R. § 11.18(c)(5) and thereby refused to issue the patent. Therefore, USAA has pled sufficient facts to identify a material misrepresentation or omission.

### B. Misrepresentation of the Priority Claims of the Patent-in-Suit

USAA alleges that Plaintiffs and their lawyers and agents materially misrepresented the priority claims of the '432 patent. USAA alleges such conduct occurred to obtain an earlier—that is, a more advantageous—filing date for the '432 patent. ECF No. 88 at 14–15.

#### 1. Priority Claims

At issue are two types of priority claims: "continuations" and "continuations-in-part." "A continuation application is one that is filed during the pendency of an application previously filed by the same inventor, called the original or 'parent' application. The continuation application discloses and claims only subject matter disclosed and claimed in the original or parent application." Reynolds Metals Co. v. Continental Group, Inc., 525 F.Supp. 950, 970 (N.D. Ill. 1981). Such applications are filed by applicants who wish to pursue additional claims to an invention disclosed in the earlier application

(that is, the parent application) that has not yet been issued or abandoned.

This application then receives the benefit of the filing date of the earlier patent application. 35 U.S.C.A. § 120.[10] The benefit of such an earlier filing date is that it permits the continuation application to claim the date of the filing of the first application (the priority date) as the effective date of filing. Thus, the prior art which is taken into account for examining the novelty of the invention claimed in the continuation application does not encompass everything published prior to the filing date of the continuation application, but rather everything published prior to the priority date (that is, the filing date of the parent application). Bone Care Intern., LLC v. Pentech Pharmaceuticals, Inc., 741 F.Supp.2d 865, 872 (N.D. Ill. 2010).

By contrast, a continuation-in-part application is one that repeats a portion of an earlier application but also adds matter not disclosed in the earlier one. Chemithon Corp. v. Procter & Gamble Co., 287 F.Supp. 291, 298 (D. Md. 1968). Claims of a continuation-in-part application which find support in the specification of the parent application are entitled to the filing date of the parent application, but claims in the continuation-in-part application which do not find support in the parent application are entitled to no earlier filing date than that of the continuation-in-part application. Chisholm–Ryder Co., Inc. v. Lewis Mfg. Co., Inc., 398 F.Supp. 1287 (W.D. Pa. 1975).

---

10. 35 U.S.C.A. 120 provides:

An application for patent for an invention disclosed in the manner provided by section 112(a) (other than the requirement to disclose the best mode) in an application previously filed in the United States, or as provided by section 363 or 385, which names an inventor or joint inventor in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

## 2. USAA's Claims of Inequitable Conduct

At issue are two types of alleged mispresentation with respect to the '432 priority chain. First, in the application for the '432 patent, the '432 patent is described as a continuation of the '676 patent, and the '676 patent is described as a continuation of the '837 patent. ECF No. 200, at 23. Plaintiffs admit filing the '432 and '676 patents as continuations was incorrect because both are in fact continuations-in-part. However, Plaintiffs further argue that such mislabeling was the result of a clerical error, rather than as the result of intent to deceive the PTO. ECF No. 105, at 10. (Similarly, in prosecuting another patent, the '538 patent, see infra p. 723, Plaintiffs also admit to mislabeling the '538 patent as a continuation of the '676 patent, and the '676 patent as a continuation of the '837 patent. Again, Plaintiffs claim such mislabeling was the result of a clerical error. ECF No. 205, at 13.)

Second, Plaintiffs have submitted filings before the PTO claiming that the '432 patent claims priority to the '129 patent and thereby the '837 patent (through the '129 patent). Id. at 30–31. Such filings claim

that the delay in petitioning for the benefit through this priority chain was "unintentional" (despite the '129 patent's filing in 2006 and issuance in 2012, see supra p. 711). Id. Thus, the question is whether USAA's pleadings give rise to an inference of inequitable conduct or to inadvertent clerical errors and delays.

USAA claims that the '432 patent is unenforceable because the applicants misrepresented (1) that the '432 patent was a continuation of the '676 patent, (2) that the '676 patent was a continuation of the '837 patent (including, as discussed above, with respect to the non-publication requests, see supra note 9),[11] and (3) that '432 patent was thus entitled to a priority date earlier than its filing date of September 15, 2008. (USAA claims that the priority date of the '432 patent is no earlier than its filing date.)[12] ECF No. 200, at 25. USAA argues that had the PTO known of the correct priority date and not relied on the misrepresentation, the PTO would not have issued the '432 patent because inter alia, (1) the PTO would not have relied on an examination of prior art based on the false priority date misrepresented by the applicants;[13] and (2) the '837

11. USAA argues that Plaintiffs are incorrect in stating that USAA has failed to show but-for materiality by failing to identify specific areas where the '432 patent lacks support in the '676 or '129 patents. USAA argues (1) that Plaintiffs have already admitted that at least one claim of the '432 patent is not fully supported by its parents by amending the '432 patent to claim priority to both the '676 and '129 patents as a continuation-in-part; and (2) that the burden of showing which claims of the '432 patent find written description support in its parents lies with the Plaintiffs, not USAA. ECF No. 210, at 3. See also PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1305–06 (Fed. Cir. 2008).

12. USAA also points to two recent actions by the PTO granting petitions for Covered Business Method Review of the '432 patent (in which an administrative patent judge deter-

mines the validity of patents related to data processing or other financial product/services operations). In granting the petitions, the PTO stated that the Plaintiffs have failed to demonstrate the priority chain and thus treats the '432 patent's filing date as September 15, 2008, rather than the earlier 2001 filing date of the '837 patent. ECF No. 200, at 25, Ex. Nos. 5, 6.

13. USAA also argues that, regardless of any argument Plaintiffs make concerning the lack of importance related to the distinction between continuation and continuation-in-part, Plaintiffs still obtained the benefit of the priority date by having the patents in the chain labeled as continuations; thus, the distinction between the two is significant. ECF No. 200, at 26.

patent application published was identical to the specification of the '432 patent and therefore anticipated every claim of the '432 patent under 35 U.S.C. § 102. Id. at 25–26. Finally, USAA argues, the '432 patent cannot even make an indirect priority claim to the '837 patent, see supra note 9. ECF No. 200, at 25.

USAA further alleges that Plaintiffs Nader and Kamran Asghari–Kamrani, as well as their agents Bijan Tadayon, Veronica–Adele Dela Roca Cao, Marianna Hann, Tiffany Little and Michael Fortkort, all had a duty of candor to the PTO and a duty to disclose the correct priority claims of the '432 patent to the PTO, yet willfully and knowingly withheld and misrepresented information material to the patentability of the subject matter to the PTO throughout the prosecution of the '423 patent. USAA alleges at least thirty-two specific instances of material misrepresentation (including withholding material information) during the prosecution of the '432 patent including, inter alia:

- On September 15, 2008, Bijan Tadayon filed a Declaration for Utility or Design Patent Application and a new patent application as part of the application that led to the '432 patent but failed to include in the filing the correct priority of the '432 patent; USAA alleges that, had Mr. Tadayon reviewed the file history of the application, he would have realized the '432 patent was not a continuation of the '646 patent, which itself was not a continuation of the '837 patent;

- On September 12, 2008, during prosecution of the '432 patent, the Plaintiffs signed the above-described declaration and applications despite knowledge that the '432 patent could not claim priority to the '676 patent, which in turn could not claim priority to the '837 patent, yet continued to mis-

represent the '432 patent's correct priority information (USAA alleges similar specific incidents throughout the prosecution of the '432 patent from 2009 through 2012, including with relation to Powers of Attorney filed with the USPTO);

- On September 8, 2009, Veronica–Adele Dela Roca Cao and Marianna Han filed a Terminal Disclaimer, an Amendment Letter, and other related papers for Plaintiffs with the PTO; USAA claims Ms. Dela Roca Cao and Ms. Hann also knew about the false priority chain but did not correct the information (USAA alleges similar incidents on February 17, 2010 and March 2, 2010);

- On August 5, 2010, Michael P. Fortkort filed affidavits and other related papers during the prosecution of the '432 patent with the USPTO; USAA similarly alleges that Mr. Fortkort would have known about the false priority chain but did not correct the information (USAA alleges similar incidents on August 24, 2010, November 3, 2010, November 12, 2010, November 18, 2010, February 11, 2011, March 11, 2011, April 14, 2011, July 6, 2011, October 20, 2011, November 17, 2011, December 12, 2011, March 1, 2012, May 25, 2012, and August 13, 2012).

Id. at 8–23. The result of such continual withholding of information, according to USAA, resulted in the fraudulent issuance of the '432 patent. USAA further argues that "given the number of distinct law firms who made appearances in the prosecution of the '432 patent and those that depend on the '432 patent, the most reasonable inference is not an innocent mistake, but a clear intent to deceive." ECF No. 200, at 8.

As additional evidence of a pattern of misrepresentation before the PTO—

though not as independent claims of inequitable conduct before the PTO with respect to the prosecution of the '432 patent—USAA also points to filings with the PTO on behalf of the Plaintiffs with respect to related patents. See Intellect Wireless, 732 F.3d at 1344–1345 (finding that it "no clear error" in a district court's finding of intent to deceive based on a consideration both the alleged misrepresentations made during the prosecution of the patent at issue as well a "pattern of false and misleading statements during prosecution of related patents").

First, USAA points to filings by Plaintiffs' current litigation counsel, Reece Nienstadt, in prosecuting a claimed continuation-in-part of the '432 patent, Appl. No. 13/606,538 ("the '538 patent"), that are allegedly indicative of an overall pattern to deceive the PTO. For example, in a transmittal letter filed with an Information Disclosure Statement for the '538 patent, Plaintiffs' present counsel states that that the '432 patent was filed as a continuation-in-part of the '676 patent, and that the '676 patent was a continuation-in-part of the '837 patent. ECF No. 200, at 26–29. However, as discussed above, these patents were represented as continuations of one another in the filings for the '432 patent. Id. at 28. USAA alleges this misstatement, along with others, in the prosecution of the '538 patent, are indicative of pattern of misrepresentation with respect to the '432 Patent that extends back to its prosecution. Id. at 26–30.

Second, USAA points to the filing by another of Plaintiffs' attorneys, Jae Youn Kim (who is not involved in the instant litigation), of at least two petitions with the PTO to claim the following priority chain: the '432 patent as claiming priority to the '129 patent, which in turn claims priority to the '837 patent. Id. at 31–33. In these petitions, Mr. Kim claims there was an unintentional delay of over four years in waiting to claim priority through the '129 patent. Id. However, USAA points to a Terminal Disclaimer to Obviate a Provisional Double Patenting Rejection Over a Pending "Reference" Application (disclaiming the '129 patent) filed during the prosecutions of both the '432 patent and the '129 patent that would have put the Plaintiffs on notice of the potential relationship between the two patents and thereby any priority claims as to the '129 patent. Id. Had Mr. Kim fulfilled his duty to investigate the priority claims prior to filing with the PTO, he would have known that the failure to claim priority through the '129 patent previously was not "unintentional." Furthermore, the PTO has already dismissed one of Mr. Kim's petitions for Plaintiffs to claim such a priority chain; in doing so, the PTO noted that:

[T]he entire delay in the submission of the fourth, fifth, and sixth priority claims ... was not unintentional if Law Firm 1, Law Firm 2, or Law Firm 3 made the choice not to file any of the claims at any point when handling prosecution of the application. At least one of the prior law firms was aware of the existence of both the instant application and [the application for the '129 patent]. Specifically, a power of attorney to Law Firm 3 was filed on the same date in the instant application and in [the application for the '129 patent].

Id. at 31. Similar to USAA's claim regarding Mr. Nienstandt, USAA alleges that the only reasonable inference from such filings is that the Plaintiffs and their agents have engaged in and continue to engage in an intentional effort to mislead the PTO with regard to the priority claim of the '432 patent. Id. at 32–33.

Furthermore, as discussed above, see supra note 9, USAA claims that the Plaintiffs have affirmatively disclaimed a priori-

ty chain through the '129 patent by virtue of the 2006 Non–Publication Request filed by Plaintiffs that states that the '129 patent discloses a different invention than the '837 patent. ECF No. 200, at 32.

In turn, Plaintiffs argue that the most reasonable inference is that the agent who handled the initial filing of the '432 patent made a "simple, innocent clerical error" by mislabeling the application as a "continuation" rather than a "continuation-in-part." This mislabeling was inadvertently, according to Plaintiffs, carried on by the agents prosecuting the '432 patent. ECF No. 205, at 8. Furthermore, Plaintiffs argue, this error was later corrected. Id.

In support of this view, Plaintiffs argue that it is not the label of "continuation" or "continuation-in-part" that is material but rather the "relationship-in-fact" that controls. See Transco Products, Inc. v. Performance Contracting, Inc., 38 F.3d 551, 556 (Fed. Cir. 1994) ("The PTO has noted that the expressions 'continuation,' 'divisional,' and 'continuation-in-part' are merely terms used for administrative convenience."). Plaintiff claims that a cursory review by the PTO of the applications for the '432 patent, the '676 patent, and the '837 patent would have revealed the clerical error because the '676 patent has a different specification and is therefore a "continuation-in-part" by definition. Plaintiffs thus claim that the only reasonable inference is that the applicants committed an innocent clerical error. (As noted above, see supra note 13, USAA responds by noting that even if there was a clerical error and it is the relationship-in-fact that controls, the '432 patent still received the benefit of the '837 patent priority date; thus, any benefit received by the '432 patent as the result of the '837 priority date makes even the "mislabeling" or "clerical error" material.)

Plaintiff further argues generally that USAA is setting up a fishing expedition in discovery, serving at least fourteen subpoenas on third parties who have had contact with the Plaintiffs, including Plaintiff's past patent attorneys and agents. ECF No. 205, at 9. Plaintiffs broadly claim that USAA has failed to plead "but-for" materiality, arguing USAA's assertion is bare and without any factual allegations that would support a finding that there was not sufficient support for any of the patent claims. Id. at 10.

With respect to the activity in related patent prosecutions, Plaintiffs similarly argue that when Plaintiffs' current counsel, Mr. Nienstadt, filed an application for the new '538 patent as a "continuation" rather than a "continuation-in-part," such an error was clerical, rather than part of a pattern of misrepresenting the priority chain. Id. at 12–15.

Finally, Plaintiffs also argue that any post–'432 issuance activity by Mr. Nienstadt and Mr. Kim cannot form the basis of a claim of inequitable conduct. Therasense, 649 F.3d at 1291, requires that a party alleging inequitable conduct before the PTO prove that but for the misrepresentation before the PTO, the PTO would not have granted the patent. Plaintiffs argue that because Mr. Kim and Mr. Nienstadt engaged in the alleged plan to deceive the PTO after the '432 patent had already been issued, they fail to meet the Therasense but-for standard—Mr. Kim and Mr. Nienstadt were not involved in the prosecution of the '432 patent, and so could not have affected the issuance of the patent through any alleged misrepresentations. ECF No. 205, at 20. Thus, Plaintiffs conclude, Mr. Kim and Mr. Nienstadt cannot be held forth as evidence of inequitable conduct. Id.

In response, USAA argues that Therasense, 649 F.3d at 1293 clearly articulates

an exception to the but-for requirement that is applicable in the instant matter:

> Although but-for materiality generally must be proved to satisfy the materiality prong of inequitable conduct, this court recognizes an exception in the cases of affirmative egregious misconduct. . . . When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material.

USAA argues because (1) Mr. Kim stated that the four-year delay in claiming priority through the '129 patent was "unintentional" and (2) Mr. Nienstadt marked the three main patents in the priority chain as continuations rather than continuations-in-part—despite circumstances that would have put both attorneys on notice of the misrepresentations contained in their statements—such statements were affirmatively false. ECF No. 218, at 2–3. According to USAA, the affirmatively false statements to the PTO by Mr. Kim and Mr. Nienstadt fit squarely within the Therasense exception for material misconduct. Id.

### 3. Analysis

#### a. Specific Intent

██ USAA's inequitable conduct allegations with respect to the alleged material misrepresentations before the PTO include sufficient facts for the Court to reasonably infer (1) that the Plaintiffs and their agents misrepresented in the application for the '432 patent that the '432 patent was a continuation of the '676 patent; (2) that the Plaintiffs and their agents misrepresented that the '676 patent was a continuation of the '837 patent, and (3) that the PTO relied on these representations to issue a priority date for the '432 patent other than its filing date, to which it was not entitled

As discussed above, if either the Plaintiffs or Plaintiffs' agents examined the patents as they were filing documents and came upon any misrepresentations, they would have had a duty to disclose such information to the PTO. Given the Plaintiffs' and the agents' exposure to the patents and their work on the filings for the PTO, as detailed in USAA's pleadings at ECF No. 200, at 8–23, Plaintiffs and their agents would have been aware of the history of the '432 patent and related patents.

The importance of such knowledge concerning related patents in the same family would have been especially heightened because Plaintiffs and their agents were specifically claiming, throughout the prosecution of the '432 patent, the benefit of an earlier priority date for the '432 patent through the '676 and '837 patents. Thus, much of this information would have been extremely material to patentability, see supra note 9. Furthermore, Plaintiffs and their agents would have known such information would have been highly material. However, by failing to disclose the information of which they were aware and which they knew to be material, Plaintiffs and their agents apparently violated their duty of candor and did so, based on USAA's pleadings, with the intent to avoid disclosing to the PTO information that would have borne on the patentability of the patent-in-suit. By pleading specific instances of continuing failure to disclose such information to the PTO, USAA has pled sufficient facts for this Court to infer intent to withhold material information from the PTO and, accordingly, to engage in inequitable conduct before the PTO.

With respect to the claims concerning post-issuance activity by Mr. Nienstadt and Mr. Kim, this Court notes that USAA does not plead a distinct claim of inequitable conduct against these agents. Rather, this Court notes that conduct in related

patent applications may be indicative of an overall pattern of inequitable conduct. This, in turn, strengthens any inference of intent to deceive. It does not present a distinct claim of inequitable conduct. As the Federal Circuit noted in Intellect Wireless, a district court may consider not only the alleged misrepresentations made during the prosecution of the patent at issue, but a "pattern of false and misleading statements during prosecution of related patents" that "make[ ] the inference [of intent] stronger." 732 F.3d at 1344–1345.

Based on USAA's pleadings, this Court finds that Mr. Nienstadt and Mr. Kim's actions with respect to related patents strengthens the inference of intent to deceive the PTO as to the priority claim of the '432 patent. Even if the mislabeling of the priority chain in the '538 patent filings and the attempts to obtain the benefit of the '837 filing date through the '129 patent were indeed the result of standalone clerical errors or unintentional delays, these actions—in combination with the pattern of inequitable conduct pleaded with respect to the prosecution of the '432 patent—give rise to an inference of intent to deceive. Furthermore, such actions do fit into, at this stage, the exception to the Exergen but-for standard as sufficiently pleaded alleged affirmative egregious misconduct.

### b. Materiality

■ Likewise, USAA has sufficiently pleaded material misrepresentation or omission, see supra pp. 722–23. Had the PTO known of the correct priority claims for the '432 patent and not relied on the misrepresentations, it would not have issued the '432 patent—the hallmark of materiality.

Fed. R. Civ. P. 9(b) also requires the pleading of inequitable conduct to "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Exergen, 575 F.3d at 1328. To this end, USAA has pleaded with sufficient specificity.

First, USAA's Amended Counterclaim identifies specific individuals—the Plaintiffs and their agents Bijan Tadayon, Veronica–Adele Dela Roca Cao, Marianna Hann, Tiffany Little, and Michael Fortkort—who allegedly engaged in the misrepresentation and/or withholding of material information, and thus inequitable conduct. Therefore, this Court finds the pleadings sufficiently identify the "who" of the material misrepresentation or omission.

Defendant has also clearly identified the "what," "when," and "where" by detailing at least thirty-two specific instances of filings between 2008 and 2012 with the PTO—throughout the prosecution of the '432 patent—during which Plaintiffs and their agents had the opportunity to disclose material information concerning the priority claims of the '432 patent, yet withheld such information.

Finally, USAA has sufficiently pleaded, in at least there ways, "how" a material misrepresentation or omission occurred. First, in examining the '432 patent, the PTO only relied on prior art based on the allegedly false priority date—the '837 filing date—that was represented to the PTO by the Plaintiffs and the agents who prosecuted the '432 patent. Based on USAA's pleadings, the '837 patent anticipates every single claim, to the extent such claims have written description support, of the '432 patent under 35 U.S.C. § 102. ECF Nos. 200, at 25; 210, at 2–3. The PTO would have rejected every claim in the '432 patent as anticipated had it known that the '432 patent was not entitled to the claimed priority date. Second, as discussed above, see supra note 9, the misrepresen-

tation in the Non–Publication Requests would have rendered it impossible for the '432 patent to make indirect priority claims. Third, had the PTO also known of the breach of the duty of candor, the PTO may have terminated the proceedings for the prosecution of the '432 patent, also bearing on materiality.

## V. CONCLUSION

Upon a review of the pleadings and subsequent filings, this Court finds that the Defendant has sufficiently pleaded inequitable conduct. However, this Court wishes to emphasize that it takes no position on "contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C., 980 F.2d at 952. At the Motion to Dismiss stage, it is merely the task of this Court to determine whether the Defendant has stated with particularity the circumstances constituting inequitable conduct. Given that the Court has determined that the Defendant has met this standard, Defendant's Amended Counterclaim will survive this stage. Nonetheless, whether the inequitable conduct claims can be proven by clear and convincing evidence, Cancer Research Tech., 625 F.3d at 732, will depend on future proceedings.

Accordingly, for the reasons stated herein, Plaintiffs' Motion to Dismiss for Failure to State a Claim is **DENIED**. ECF No. 204.

The Clerk is **DIRECTED** to forward a copy of this Order to all Counsel of Record.

**IT IS SO ORDERED.**